UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

HAROULLA PAPALEONTIOU,

*Plaintiff,*

– against –

NATIONAL ASSOCIATION OF BOARDS
OF PHARMACY,

*Defendant.*

---

**MEMORANDUM & ORDER**
25-cv-03146 (NCM) (MMH)

**NATASHA C. MERLE**, United States District Judge:

Plaintiff Haroulla Papaleontiou brings this action for breach of contract, negligence, negligent mispresentation, and deceptive business practices under New York General Business Law § 349 against defendant National Association of Boards of Pharmacy ("NABP"). *See generally* Compl. Defendant moves to dismiss all but plaintiff's breach of contract claim and requests for certain damages. *See* Mot.[1] For the reasons stated below, defendant's motion is **GRANTED in part**, **DENIED in part.**

## BACKGROUND

To become a licensed pharmacist, aspiring pharmacists must satisfy educational and training requirements as well as pass two licensing exams. Compl. ¶¶ 10–13. The first exam is the Multistate Pharmacy Jurisprudence Examination. Compl. ¶ 14. The second exam is the North American Pharmacist Licensure Examination ("NAPLEX"). Compl.

---

[1]    The Court hereinafter refers to defendant's Brief in Support of Motion for Partial Dismissal of Plaintiff's Complaint, ECF No. 18, as the "Motion"; plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Partial Dismissal of the Complaint, ECF No. 21, as the "Opposition"; and defendant's Reply in Support of Motion for Partial Dismissal of Plaintiff's Complaint, ECF No. 22, as the "Reply."

¶¶ 2, 14. NABP alone administers the NAPLEX, which is a standardized, computer-based exam used to assist state boards of pharmacy in evaluating a candidate's pharmacy skills and knowledge for the purpose of issuing a pharmacist license. Compl. ¶¶ 15–17, 44. NABP is organized and exists under the laws of Kentucky, with its principal place of business in Illinois, where it is also registered to do business. Compl. ¶ 28.

To register for the NAPLEX, prospective test takers must create an account on NABP's website and pay application fees. Compl. ¶¶ 19, 44. The NAPLEX can be taken at testing centers nationwide and is administered year-round. Compl. ¶ 20. Test scores are reported to test takers as well as to state licensing boards and pharmacy institutions designated by the test taker to receive the results. *Cf*. Compl. ¶ 58.

On its website under the heading "Exam Results," NABP states test takers "will receive Pass or Fail exam results approximately seven business days after you have taken the exam." Compl. ¶ 45. NABP's 2022 Candidate Application Bulletin states the following under the heading "Rescore Process": "A highly rigorous process is used to ensure the accuracy of examination results, including a parallel scoring method involving independent scoring systems. Therefore, it is extremely unlikely that your exam results will be changed as a result of the rescore process." Compl. ¶ 42; *see* Decl. of Kelly Hartzler Ex. 4 ("Bulletin"), ECF No. 20 at 68–118.[2]

Plaintiff is a resident of New York State. Compl. ¶ 27. After completing a bachelor's degree and a Doctor of Pharmacy, she registered to take the NAPLEX to advance her goal of becoming a licensed pharmacist. Compl. ¶¶ 1, 32. On August 20, 2022, plaintiff took

---

[2]    Throughout this Order, page numbers for docket filings refer to the page numbers assigned in ECF filing headers.

the NAPLEX. Compl. ¶ 4. After taking the exam, plaintiff was informed she had failed. Compl. ¶ 35.

As a result of the failing score, plaintiff lost her intern's license and a position in a competitive residency program at NYU Langone Health, where she was going to earn an annual salary of $54,849.38. Compl. ¶¶ 3, 12, 36, 55. Plaintiff registered to retake the NAPLEX and paid the associated fees. Compl. ¶ 60. She also spent thousands of dollars on NAPLEX tutors, preparation courses, and study aids. Compl. ¶¶ 6, 36, 60. Plaintiff took time away from work due to the additional time she devoted to studying to retake the NAPLEX. Compl. ¶¶ 55, 61. She suffered severe emotional and physical harm after receiving the incorrect failing score. Compl. ¶¶ 53, 56. Plaintiff also suffered reputational harm as a result of the incorrect failing score being reported to state licensing boards and pharmacy institutions. Compl. ¶ 58.

On November 8, 2022, NABP informed plaintiff of a scoring error and that she had in fact passed the NAPLEX. Compl. ¶¶ 7, 37, 54. The scoring error resulted in incorrect scores being disseminated to approximately 220 NAPLEX test takers, including plaintiff. Compl. ¶¶ 7, 54.[3] NABP had previously released incorrect scores to 400 test takers in 2021. Compl. ¶ 50.

### LEGAL STANDARD

---

[3]    The Court may take judicial notice of a fact outside the record that are "not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Here, the Court will take judicial notice of *Glaspie v. NABP*, No. 22-cv-06497 (N.D. Ill. Nov. 19, 2022), a nationwide class action suit commenced against defendant by other NAPLEX test takers who erroneously received a failing grade in 2022. The Court also takes judicial notice that plaintiff submitted a letter to opt out of the class settlement in *Glaspie*. No. 22-cv-06497, ECF No. 55-1 at 4–6. Plaintiff's opposition does not respond to defendant's assertion on this point, and the Court considers the subject not in "reasonable dispute" between the parties. Fed. R. Evid. 201(b).

When deciding a motion to dismiss, a district court must "accept[] all factual claims in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." *Lotes Co. v. Hon Hai Precision Indus. Co.*, 753 F.3d 395, 403 (2d Cir. 2014). [4] "The issue" on a motion to dismiss "is not whether a plaintiff will ultimately prevail" but instead whether a plaintiff is "entitled to offer evidence to support the claims." *Sikhs for Just. v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012).

Accordingly, dismissal is only appropriate if "it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief." *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000). At the same time, plaintiff must allege sufficient facts to "nudge[] their claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Nwaokocha v. Sadowski*, 369 F. Supp. 2d 362, 366 (E.D.N.Y. 2005) (quoting *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002)).

## DISCUSSION

Plaintiff brings claims for breach of contract, negligence, negligent misrepresentation, and violation of New York General Business Law ("NYGBL") for deceptive business practices. Compl. ¶¶ 62–107. Defendant moves to dismiss all of plaintiff's tort claims (including the NYGBL claim), as well as plaintiff's recovery for certain damages. *See generally* Mot.; Reply. Defendant does not move to dismiss plaintiff's breach of contract claim. *See* Mot. 11, 11 n.5. The Court reviews defendant's arguments with respect to each claim.

---

[4]    Throughout this Order, the Court omits all internal quotation marks, footnotes, and citations, and adopts all alterations, unless otherwise indicated.

### I.     Tort Claims

#### A.  *Negligence*

Defendant argues plaintiff's negligence claim is impermissibly duplicative of her breach of contract claim and must be dismissed. Mot. 12–15. In support, defendant argues that plaintiff's claim for negligence is based on the same "commitments" that she alleges in her breach of contract claim: "that NABP will correctly score exams and correctly report individual scores." Mot. 14. Defendant contends that plaintiff has not alleged that defendant owed her a legal duty independent of the contract itself, and thus any violation cannot be considered a tort. Mot. 14–15. Plaintiff disagrees, maintaining that she has plausibly pled an independent negligence claim. *See* Opp'n 5–7.

"To establish a prima facie case of negligence under New York law, a plaintiff must demonstrate (1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom." *La Pecora Bianca Holdings, LLC v. Empowered Hospitality LLC*, No. 19-cv-09655, 2021 WL 1164267, at *4 (S.D.N.Y. Mar. 25, 2021) (quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 286 (2d Cir. 2006)). "[I]t is a well-established principle that a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated." *Ellinghaus v. Educ. Testing Serv.*, No. 15-cv-03442, 2016 WL 8711439, at *6 (E.D.N.Y. Sept. 30, 2016) (quoting *Nielsen Media Research, Inc. v. Microsystems Software, Inc.*, No. 99-cv-10876, 2002 WL 31175223, at *7 (S.D.N.Y. Sept. 30, 2002)).

Here, plaintiff's negligence claim must be dismissed as duplicative of her breach of contract claim. From the text of plaintiff's complaint it is clear that the alleged negligent breach is based on defendant's conduct complained of in the alleged breach of contract.

Plaintiff's breach of contract claim alleges that a contract existed whereby "NABP would correctly score the exams and provide test takers with the correct score." Compl. ¶ 64. She alleges a breach occurred when defendant "incorrectly scored" plaintiff's NAPLEX exam and reported the incorrect results. Compl. ¶¶ 65–66. Plaintiff negligence claim alleges defendant owed her a duty to "properly score the NAPLEX and to timely identify errors in scoring prior to the reporting of scores." Compl. ¶ 73. Plaintiff alleges NABP breached its duty when it:

> (1) fail[ed] to properly score the NAPLEX; (2) fail[ed] to discover scoring errors before reporting individual scores; (3) fail[ed] to timely implement effective audit or quality control procedures under which the examination scores were examined and determined to be accurate before reporting individual scores; [and] (4) fail[ed] to implement appropriate procedures to prevent scoring errors.

Compl. ¶ 74; *see also* Opp'n 6 ("NABP owed a . . . duty to [p]laintiff . . . to accurately score and report results of the exam.").

Comparing the text of the breach of contract claim with the text of the negligence claim, plaintiff uses "identical language when describing [her] contract-based [and negligence] claims." *IKB Int'l S.A. v. Wells Fargo Bank, N.A.*, 40 N.Y.3d 277, 291 (2023). Further, plaintiff alleges "the *same duties* under both" claims—principally, the duty to correctly score the NAPLEX and the duty to provide test takers with correct scores. *See Beck v. Metropolitan Bank Holding Corp.*, 747 F. Supp. 3d 442, 445–46 (E.D.N.Y. 2024) (finding negligence and breach of contract claims were duplicative where plaintiff alleged the same duty, "namely the duty to adopt and implement adequate security procedures reasonably designed to protect [the plaintiff]"); *see also La Pecora Bianca Holdings*, 2021 WL 1164267, at *4 ("[T]he alleged breaches of the duty of care—failing to complete the required audits and flag noncompliance—are exactly the conduct complained of as

breaches of contractual obligations."); *Ellinghaus*, 2016 WL 8711439, at \*6 (citing *In re Educational Testing Serv. Praxis Principles of Learning and Teaching: Grades 7-12 Litig.*, 517 F. Supp. 2d 832, 842 (E.D. La. 2007) (holding negligence claim duplicative of contract claim where "the duties cited [by the plaintiffs] are simply restatements of the defendant's  broad contractual duty to correctly score the [exam] . . . and to correctly report the test-takers' scores")). Nor does plaintiff's allegations that defendant failed to implement quality control procedures and procedures to prevent scoring errors create an independent legal duty. These allegations are a description of defendant's contractual obligations of not only scoring the NAPLEX correctly, but of providing test takers with the correct score.

Plaintiff attempts to save her negligence claim by making a conclusory argument that NABP owed a "separate duty" from the contractual obligation. Opp'n 5–6. But neither the complaint, nor plaintiff's opposition brief, define this separate duty. Plaintiff's reliance on *Landon v. Kroll Lab'y Specialists* also fails to move the needle. Opp'n 5–6 (*citing Landon v. Kroll Lab'y Specialists, Inc.*, 22 N.Y.3d 1 (2013)). In *Kroll*, the court found that a drug testing company owed a duty to avoid harm to its test subjects, even though a contract existed between the parties (but not the test subjects). 22 N.Y.3d at 5. Plaintiff argues *Kroll* is relevant here because, like the drug-testing laboratory, NABP alone is in control of the NAPLEX, its scoring procedures, and is in the "'best position to prevent false results." Opp'n 6. However, this doesn't answer the question relevant here– whether NABP owed a duty to plaintiff that was distinct from its contractual duty. Even if, as plaintiff alleges, NABP had specialized knowledge and control over the NAPLEX and its scoring procedures, plaintiff does not make clear how this supports a reasonable

inference that defendant owed a duty to plaintiff that was independent from defendant's contractual obligation.

Accordingly, plaintiff's negligence claim is dismissed.

### B.  Negligent Misrepresentation

Plaintiff's negligent misrepresentation claim is similarly duplicative of her breach of contract claim. "To prevail on a claim of negligent misrepresentation under New York law, a plaintiff must show (1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information." *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 490 (2d Cir. 2014) (quoting *J.A.O. Acquisition Corp. v. Stavitsky,* 8 N.Y.3d 144, 148 (2007)). A negligent misrepresentation claim is duplicative of a breach of contract claim when the complaint "fails to allege facts that would give rise to a duty that is independent from the parties' contractual obligations." *Michael Davis Constr., Inc. v. 129 Parsonage Lane, LLC*, 194 A.D.3d 805, 808 (N.Y. App. Div. 2021); *see Bd. of Managers of Beacon Tower Condo. v. 85 Adams St., LLC*, 25 N.Y.S.3d 233, 239 (2d Dep't 2016) (affirming dismissal of negligent misrepresentation claim duplicative of breach of contract claim for failure to allege facts that would give rise to a duty owed to the plaintiffs "independent of the duty imposed by the . . . agreements"); *Wells Fargo Bank, N.A. v. HoldCo Asset Mgmt., L.P.*, No. 16-cv-06356, 2017 WL 2963501, at *18 (S.D.N.Y. July 11, 2017) (finding breach of contract claim predicated on promise to hold an auction without reserve and a negligent misrepresentation claim predicated on a representation that the auction would be held without reserve were predicated on the same wrongful conduct)*; OP Solutions, Inc. v. Cromwell & Moring, LLP*, 900 N.Y.S.2d 48, 49 (1st Dep't 2010) (affirming dismissal of

8

negligent misrepresentation claim predicated on "the same purported wrongful conduct as . . . the claim for breach of contract inasmuch as they all involve defendant's disclosure of plaintiff's purported proprietary and confidential information to a consultant" and on the separate grounds that it was "defective in the absence of a special relationship of confidence and trust between the parties").

Under her negligent misrepresentation claim, plaintiff alleges defendant owed her a duty to "accurately score the NAPLEX and provide test takers with correct results," Compl. ¶ 78—the same conduct her breach of contract claim is predicated on. *Compare* Compl. ¶ 64 ("This contract contained express and implied provisions that NABP would correctly score the exams and provide test takers with the correct score."), *with* Compl. ¶ 78. Plaintiff fails to provide factual allegations that would support that defendant had a duty distinct from its contractual duty. Instead, "the very same provisions that form the basis for [plaintiff's] breach of contract claim also lie at the heart of [her] negligent representation claim," namely that defendant promised to correctly score the NAPLEX but failed to do so. *See HoldCo Asset Mgmt.*, 2017 WL 2963501, at *18.[5]

---

[5]    Plaintiff argues that defendant's "unique or specialized expertise" in administering, scoring, and reporting scores for the NAPLEX creates a "special relationship" between the parties, and thus a separate duty owed to plaintiff. Opp'n 7. The presence of a special relationship, for the purposes of a negligent misrepresentation claim, turns on three factors: (1) "whether the person making the representation held or appeared to hold unique or special expertise"; (2) "whether a special relationship of trust or confidence existed between the parties"; and (3) "whether the speaker was aware of the use to which the information would be put and supplied it for that purpose." *Kimmell v. Schaefer*, 89 N.Y.2d 257, 264 (1996). Plaintiff's complaint fails to allege a special relationship existed between the parties, *see generally* Compl., nor can one be inferred from the complaint's allegations. *See HoldCo Asset Mgmt.*, 2017 WL 2963501, at *19 (finding plaintiff failed to assert a special relationship between seller in an auction and a bidder, nor could one be inferred from the complaint allegations). Even if defendant is the sole administrator of the NAPLEX, that does not demonstrate a degree of specialized knowledge necessary to induce reliance. *See Aaronson v. Kellogg Co.*, No. 18-cv-05616,

Defendant argues that plaintiff's claim must be dismissed on the additional ground that it rests on defendant's alleged failure to fulfill a "promise . . . to do something in the future," and a negligent misrepresentation must instead be "a statement that misrepresents an existing material fact." Mot. 16. Plaintiff contends that defendant is misguided because she was harmed not only by defendant's failure to perform on its promise to correctly score the NAPLEX, but also by defendant's affirmative statements that she failed the NAPLEX. Opp'n 7. Plaintiff's arguments are not meritorious.

Defendant's promise to correctly score the NAPLEX is not actionable as a negligent misrepresentation given that it is a statement to fulfill a promise in the future. *Frio Energy Partners*, 680 F. Supp. 3d at 347 ("[T]he alleged statement that Defendant 'had secured or would secure the minimum requisite $150 million of capital to invest through the Investment Fund by January 2022' is promissory in nature." (quoting complaint)). *Compare id. with id.* at 347–38 (finding the defendant negligently misrepresented a potential investment when it gave plaintiff letters of commitment addressed to third party sellers stating that the defendant committed $150 million in capital investment to plaintiff). Moreover, misrepresentations must be false at the time made. Insofar as

---

2020 WL 2489087, at *11 (E.D.N.Y. May 14, 2020) ("A defendant's knowledge regarding the particulars of its own business is not specialized knowledge."). Nor does plaintiff cite to any case law demonstrating "a closer degree of trust than that in an ordinary business relationship" between a test taker of a standardized exam and that of the exam administrator. *Frio Energy Partners, LLC v. Fin. Tech. Leverage, LLC*, 680 F. Supp. 3d 322, 346 (S.D.N.Y. 2023); *see generally* Opp'n. While a special relationship may "aris[e] out of [a] contract," *Durante Bros. & Sons, Inc. v. Flushing Nat'l Bank*, 755 F.2d 239, 252 (2d Cir. 1985), that duty must extend beyond the "contract's scope", *JP Morgan Chase Bank v. Winnick*, 350 F. Supp. 2d 393, 401 (S.D.N.Y. 2004). Here, however, the "special relationship" alleged by plaintiff does not merely *arise* out of the contract obligation, it *is* the contractual obligation, as discussed *supra. Phoenix Cos. v. Concentrix Ins. Admin. Sols. Corp.*, 554 F. Supp. 3d 568, 589 (S.D.N.Y. 2021) (finding no legal duty separate from a duty to perform under the contract).

plaintiff's claim rests on defendant's representation that it will correctly score the NAPLEX, plaintiff fails to allege that NABP "knew or should have known [the statement] to be false at the time it was made." *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, No. 02-cv-01312, 2002 WL 31426310, at *7 (S.D.N.Y. Oct. 29, 2002) (finding complaint alleged a special relationship to support a negligent misrepresentation claim but the claim was otherwise insufficient because the complaint failed to allege how the representation was false at the time made).

Accordingly, plaintiff's negligent misrepresentation claim is dismissed.

## II.   NYGBL § 349

NYGBL § 349 prohibits deceptive practices "in the conduct of any business, trade or commerce or in the furnishing of any service in this state." NYGBL § 349(a). "To make out a prima facie case under Section 349, a plaintiff must demonstrate that (1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." *Ellinghaus*, 2016 WL 8711439, at *7 (citing *City of New York v. Smokes-Spirits.com, Inc.,* 541 F.3d 425, 455 (2d Cir. 2008), *rev'd on other grounds sub nom. Hemi Grp., LLC v. City of New York,* 559 U.S. 1 (2010)). The "in this state" language of the statute creates a "territorial element" or otherwise, a "limiting phrase," *Chung v. Igloo Prods. Corp.*, No. 20-cv-04926, 2022 WL 2657350, at *8 (E.D.N.Y. July 8, 2022), that "require[s] that the transaction in which the consumer is deceived occur in New York." *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 122 (2d Cir. 2013) (quoting *Goshen v. Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 324 (2002)).

Plaintiff alleges two interrelated deceptive acts: (1) defendant deceived plaintiff by releasing incorrect NAPLEX scores to plaintiff, Compl. ¶ 99, and (2) defendant deceived

11

plaintiff with the false statement that it would score the NAPLEX and report the scores accurately, and that it had done so, Compl. ¶ 102. Defendant argues plaintiff's NYGBL § 349 claim fails because (1) the territorial requirement is not met, Mot. 21–23; (2) defendant did not engage in consumer-oriented conduct, Mot. 23–25; and (3) the alleged deceptive statements were not misleading at the time they were made, Mot. 19–21.

### A. Territorial Requirement

The territorial requirement of NYGBL § 349 gives plaintiff statutory standing to sue for deceptive practices that occurred in New York. *See Cruz*, 720 F. 3d at 123–24. NYGBL § 349 is designed to regulate consumer transactions in the state of New York regardless of each party's residency. *See Chung*, 2022 WL 2657350, at *8 (citing *Horn v. Med. Marijuana, Inc.*, 383 F. Supp. 3d 114, 128 (W.D.N.Y. 2019), *modified on reconsideration*, No. 15-cv-00701, 2019 WL 11287650 (W.D.N.Y. Nov. 21, 2019)). Defendant argues that plaintiff has failed to meet the territorial requirement because the allegedly deceptive acts, namely statements made on NABP's website and in the 2022 NAPLEX Bulletin, are not specifically directed into New York. Mot. 21–23; Reply 13–14. Plaintiff asserts that the alleged deceptive acts, all took place in New York. Compl. ¶¶ 99, 102; *see* Opp'n 8 ("[T]he deception occurred in New York, where [p]laintiff . . . took the exam, received [her] score[], and suffered harm.").

Here, plaintiff fails to plausibly allege that the deceptive act "occur[ed] in New York." *Goshen*, 98 N.Y.2d at 324, 324 n.1; *see Sharpe v. Puritan's Pride, Inc.,* No. 16-cv-06717, 2019 WL 188658, at *3–4 (N.D. Cal. Jan. 14, 2019) ("The [New York] Court of Appeals expressly rejected the theory that the GBL applies to deceptive statements that merely emanated from New York; it is the place where the consumer viewed and acted on them that matters."); *see cf. Ward v. TheLadders.com, Inc.,* 3 F. Supp. 3d 151, 168

(S.D.N.Y. 2014) (finding territorial requirement met because the "defendant operated a website in New York" and "[m]any of the relevant communications and transactions with the defendant, including the registration, cancellation, review of website materials, and various monetary transactions, apparently occurred on or through the website itself, which is equivalent to communicating or transacting directly with a New York address").

To determine whether the territorial requirement is met, the Second Circuit considers "the location of the transaction, and in particular the strength of New York's connection to the allegedly deceptive transaction." *Cruz*, 720 F.3d at 122; *see also McVetty v. TomTom North America, Inc.*, 2021 WL 965239, at *3 (S.D.N.Y. Mar. 13, 2021) (dismissing NYGBL § 349 claim brought by New York citizen who did not allege "where he was exposed to [the] allegedly deceptive materials or purchased [the defendant's] [p]roducts"). Plaintiff argues that the deceptive acts—statements regarding scoring accuracy and the incorrect score—were directed to her while she was in New York. Opp'n 8. This argument relies on plaintiff's own place of residency. However, "[t]he fact that [plaintiff] is a citizen of New York is insufficient because the General Business Law analysis does not turn on the residency of the parties." *McVetty*, 2021 WL 965239, at *3. This is consistent with the legislative intent of the NYGBL § 349, which aims to address commercial misconduct occurring in or directed to New York. *Ward*, 3 F. Supp. 3d at 168.

Here, the only transactions plaintiff alleges occurred in New York are that she took the exam in the state and that she received the incorrect score while in the state. However, plaintiff fails to allege she viewed the allegedly misleading statement in New York. Nor does plaintiff allege that she registered and paid for the exam in New York. Further, there are no allegations showing defendant directed its statements into New York. Because

13

plaintiff fails to meet the territorial requirement, she lacks standing to bring a claim under NYGBL § 349.

### B. Consumer-Oriented

Even if plaintiff met the criteria for standing under NYGBL § 349, the claim is not plausibly alleged.

First, plaintiff claims she was "misled and deceived by the incorrect NAPLEX results published by NABP." Compl. ¶ 101. However, this representation of plaintiff's own NAPLEX result is not consumer-oriented. To show a statement or representation was directed at consumers or consumer-oriented, a plaintiff must demonstrate that the statement or representation "ha[s] a broader impact on consumers at large." *Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.* ("*Oswego*"), 85 N.Y.2d 20, 25, 21 (1995); *see Koch v. Greenberg*, 626 F. App'x. 335, 340 (2d Cir. 2015) ("[C]onsumer-oriented conduct within the meaning of the NYGBL is broadly interpreted and requires merely that the [statement] at issue have a broader impact on consumers at large."). Here, plaintiff being informed that she failed the exam when she in fact passed is "unique to the parties and do[es] not have any broader impact." *Allahabi v. New York Life Ins. Co.*, No. 98-cv-04334, 1999 WL 126442, at *2 (S.D.N.Y. Mar. 10, 1999) (quoting *Oswego,* 85 N.Y.2d at 26). Instead, the allegedly false representation was made in the context of a contractual relationship "limited to just the parties" in this case. *Teller v. Bill Hayes, Ltd.*, 213 A.D.2d 141, 145 (N.Y. App. Div. 1995).

The second alleged deceptive act—defendant's representation that it will accurately score the NAPLEX and report the scores, and that it had done so, Compl. ¶ 102—is consumer-oriented. This statement was not made to plaintiff alone; it was made to all test takers, and thus has the potential to affect all those similarly situated. *See Oswego*, 85

N.Y.2d at 27. However, this second representation does not satisfy the second element—it was not materially misleading, as discussed *infra*.

### C. *Materially Misleading at the Time*

Lastly, defendant argues dismissal is warranted because NYGBL § 349 applies to representations that were materially misleading at the time they were made and not merely wrong due to subsequent events. Mot. 19–20. Under NYGBL § 349, the allegedly deceptive act must be "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Oswego*, 85 N.Y.2d at 26; *see Ellinghaus*, 2016 WL 8711439, at *8; *Bustamante v. KIND, LLC*, 100 F.4th 419, 426 (2d Cir. 2024) (providing a plaintiff must allege "a probability that a significant portion . . . of targeted consumers, acting reasonably in the circumstances, could be misled"); *see also Schuman v. Visa U.S.A., Inc.*, 788 F. Supp. 3d 563, 575 (S.D.N.Y. 2025) (explaining that the reasonable consumer test may be determined as a matter of law on a motion to dismiss). A misleading representation is "one that involves information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product." *Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 406 (S.D.N.Y. 2010); *see Ward*, 3 F. Supp. 3d at 169 (finding the plaintiffs plausibly alleged that the defendant's representation on its website were the reasons why the plaintiffs signed up for the defendant's service).

Here, plaintiff alleges that defendant represented its ability to accurately score the NAPLEX and to accurately report NAPLEX test results, and that it had accurately scored the test. Compl. ¶ 102. Plaintiff's allegation is based on the Bulletin, which states, under the heading "Rescore Process": "A highly rigorous process is used to ensure the accuracy of examination results, including a parallel scoring method involving independent scoring systems. Therefore, it is highly unlikely that your exam results will be changed as a result

15

of the rescore process." Compl. ¶ 42. It is also based on defendant's statement on its website, which states, under the heading "Exam Results," that a test taker "will receive Pass or Fail exam results approximately seven business days after you have taken the exam." Compl. ¶ 45. Plaintiff's allegations, however, are insufficient to establish that defendant's representations would be misleading to a similarly situated test taker under the circumstances here.

First, plaintiff's claim is significantly undercut by the text of the Bulletin. Defendant's statement that the scoring procedures are "rigorous" in order to "ensure the accuracy of examination results," as well as a "Rescoring Process" description, discloses the possibility that there could be errors in the scoring process. *See Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co., Inc.*, 37 N.Y.3d 169, 179, 171 N.E.3d 1192, 1199 (2021) (finding a reasonable consumer would not be misled to believe that the defendant guaranteed the accuracy or currentness of a compilation of laws and regulations where the agreement expressly stated that updated editions of the compilation will need to be purchased, thereby disclaiming the accuracy of the compilation at some point in the future); *Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013) ("There can be no section 349(a) claim when the allegedly deceptive practice was fully disclosed.") (quoting *Broder v. MBNA Corp.,* 281 A.D.2d 369, 371 (N.Y. App. Div. 2001)). Moreover, defendant released over 400 incorrect NAPLEX results in 2021, the year prior to plaintiff's own exam. Compl. ¶ 50. Thus, it is unlikely that a reasonable consumer would believe that defendant was guaranteeing accuracy of all test results, at each administration of the exam.

Second, plaintiff's allegations do not support that defendant's statements concerning accuracy and reporting procedures were misleading at the time made.

16

Instead, plaintiff relies on her incorrect test score result in August 2022 to allege that defendant's statement at some time prior had to be misleading. This argument is without merit.

Two cases are instructive on this point: *Russo v. NCS Pearson, Inc.*, 462 F. Supp. 2d 981, 998–99 (D. Minn. 2007), and *Ellinghaus*, 2016 WL 8711439, at *8. In both cases, the plaintiffs argued that the College Board deceived them when it represented that the Scholastic Aptitude Test ("SAT") scores are accurate. *Russo*, 462 F. Supp. 2d at 998–99; *Ellinghaus*, 2016 WL 8711439, at *8. In both cases, the courts found that the defendant's representations that the test would be scored accurately "does not indicate any deception at the time such promise was made." *Ellinghaus*, 2016 WL 8711439, at *8 (citing *Russo*, 462 F. Supp. 2d at 999).

The *Russo* plaintiffs challenged the erroneously inflated scores of other test takers, despite their own test results being accurate. *Russo*, 462 F. Supp. 2d at 988. In holding that the plaintiffs failed to plead a viable NYGBL § 349 claim, the court distinguished the facts at bar with those typical schemes where the statute is invoked, namely when a "consumer . . . falls victim to misrepresentations . . . usually by way of false and misleading advertising." *Russo*, 462 F. Supp. 2d at 999. The inaccurate test results did not somehow render misleading the defendant's statements that the test would be scored accurately. *Id.*

The *Ellinghaus* plaintiffs challenged a misprint in the test booklets for the administration of the SAT. *Ellinghaus*, 2016 WL 8711439, at *3. The printing error gave some test takers 25 minutes to complete a section of the SAT while others received only 20 minutes to complete the same section. *Id.* The court, relying on *Russo*, found the complaint failed to allege that the defendant's statements regarding "reliable scores . . .

17

were misleading at the time [d]efendants made them to [p]laintiffs" and not merely "proven false by subsequent events." *Id.* at \*8.

Similarly, here, defendant's incorrect reporting of plaintiff's test results does not turn defendant's statements about its ability to score the NAPLEX accurately into a deceptive or misleading statement.

Accordingly, plaintiff's NYGBL § 349 claim is dismissed.

### III.    Damages

Defendant also asks the Court to dismiss plaintiff's request for damages that are not compensable. Mot. 25–32. When a motion under Federal Rule of Civil Procedure 12(b) seeks to dismiss specific requests for relief, it is more appropriately treated as a motion to strike under Rule 12(f). *Gomez v. PetPivot, Inc.,* No. 25-cv-05622, 2026 WL 507708, at \*14 (S.D.N.Y. Feb. 24, 2026). Accordingly, the Court construes this portion of defendant's motion to dismiss as a motion to strike plaintiff's request for attorney's fees and costs and economic and non-economic damages.

Because plaintiff's claims for negligence, negligent misrepresentation, and deceptive business practices under NYGBL § 349 are dismissed, the Court takes up the parties' arguments only as they apply to plaintiff's breach of contract claim.[6] Here, as

---

[6]    In her Opposition, plaintiff addresses only the damages sought by her breach of contract claim. *See* Opp'n 8–9. Thus, the Court deems that she has waived any request for relief that would be available to her had her other claims survived. *See Robinson v. Fischer*, No. 09-cv-08882, 2010 WL 5376204, at \*10 (S.D.N.Y. Dec. 29, 2010) ("Federal courts have the discretion to deem a claim abandoned when a defendant moves to dismiss that claim and the plaintiff fails to address in their opposition papers defendants' arguments for dismissing such a claim."); *Maroney v. Woodstream Corp.*, 695 F. Supp. 3d 448, 468 (S.D.N.Y. 2023) ("In the Second Circuit, a plaintiff's failure to respond to contentions raised in a motion to dismiss constitutes an abandonment of those claims and necessitates their dismissal.") (quoting *Gordon v. Target Corp.*, No. 20-cv-09589, 2022 WL 836773, at \*17 (S.D.N.Y. Mar. 18, 2022)); *Gomez,* 2026 WL 507708, at \*16

compensation for defendant's breach of contract, plaintiff seeks "damages; . . . attorney's fees and costs; and . . . such other relief the Court deems just, proper, and equitable." Compl. ¶ 70.

### A. Attorney's Fees and Costs

The American Rule, which is followed in New York, provides that generally "a prevailing party may not collect [attorney's fees] from the loser[,] . . . unless an award is authorized by agreement between the parties, statute or court rule." *Sage Systems, Inc. v. Liss*, 39 N.Y.3d 27, 30–31 (2022). *See Giannakopoulos v. Figame Realty Mgt.*, 219 A.D.3d 803, 805–06, 195 N.Y.S.3d 253 (2d Dep't 2023) (finding that the trial court erred in awarding attorney's fees because the "parties did not make unmistakably clear in the license [agreement] that they intended to depart from the general rule that the losing party is not responsible for the winning party's attorney's fees"). Consistent with this rule, attorney's fees are not available for an ordinary breach of contract claim. *See H. Daya International Co., Ltd. v. Arazi*, 348 F. Supp. 3d 304, 312 (S.D.N.Y. 2018). Here, plaintiff alleges breach of an express and implied contract arising from NABP's website and Bulletin. Compl. ¶¶ 41–42, 63; *see* Bulletin, ECF No. 20 at 68–118. Plaintiff has not alleged in her complaint or opposition brief that the purported agreement provides for attorney's fees. *See generally* Compl.; Opp'n. Without a contract provision, whether express or implied, a statute, or court rule providing otherwise, the American Rule applies, and attorney's fees and costs are not recoverable.

### B. Non-Economic Damages

---

(dismissing the plaintiffs' request for attorneys' fees for strict products liability claims where the opposition to defendant's motion to dismiss addressed attorneys' fees only with respect to the plaintiffs' claim under NYGBL § 349).

Defendant urges the Court to strike any demand for emotional distress, physical injury, and reputational harm. Mot. 27–30; Reply 14. "[T]he Court will only strike alleged damages to the extent that they are unavailable as a matter of law." *eShares, Inc. v. Talton*, 727 F. Supp. 3d 482, 498–500 (S.D.N.Y. 2024) (discussing motion to strike relief that are unavailable as a matter of law on a breach of contract claim) (listing cases).

Plaintiff asserts an entitlement to recover for damages "which are natural and probable consequence[s] of the breach." Opp'n 8 (quoting *Bi-Economy Market, Inc. v. Harleysville Ins. Co.*, 10 N.Y.3d 187, 192 (2008)). Plaintiff suggests she suffered the following consequences of defendant's alleged breach: "devasting effects on her career, . . . serious and severe emotional distress, mental anguish, embarrassment, aggravation, . . . humiliation," Compl. ¶ 61, and "extreme physical" harm, Compl. ¶ 56.

### 1. *Emotional and Mental Distress, and Physical Injury*

In a breach of contract claim, non-breaching parties generally "cannot . . . recover damages for emotional distress." *Capeci v. Seven Corners Inc.*, No. 22-cv-06644, 2022 WL 17253527, at *2 (E.D.N.Y. Nov. 28, 2022). But emotional distress damages may be available in limited circumstances "such as a willful breach accompanied by egregious and abusive behavior," *Brown v. Gov. Emps. Ins. Co.*, 66 N.Y.S.3d 733, 736 (3d Dep't 2017), or upon a showing that the breaching party owed and violated a legal duty independent of the contract itself, *Campbell v. Silver Huntington Enters., LLC*, 733 N.Y.S.2d 685, 686 (2d Dep't 2001). *See also Wehringer v. Standard Sec. Life Ins. Co. of N.Y.*, 57 N.Y.2d 757, 759 (1982) ("[A]bsent a duty upon which liability can be based, there is no right of recovery for mental distress resulting from the breach of a contract-related duty.").

Here, damages resulting from mental and emotional distress, Compl. ¶ 61, as a matter of law, are not compensable on plaintiff's breach of contract claim. Plaintiff does

not allege willful breach, or egregious or abusive behavior on defendant's part. Nor has plaintiff alleged an independent legal duty owed to her outside of the alleged contractual obligations.

Plaintiff's allegation of "extreme physical" harm, Compl. ¶ 56, is not alleged with any particularity in the complaint and is inconsistent with the theory of her case, and thus, damages for physical harm are unavailable to plaintiff. *Franklin v. Liberty Mut. Ins. Co.*, No. 08-cv-07120, 2011 WL 476613, at *2 (S.D.N.Y. Feb. 9, 2011) (denying recovery for physical injury on a breach of contract claim where plaintiff makes bald assertion of physical injury "not alleged with any particularity and not at all consistent with [p]laintiff's allegations or his theory of the case").

### 2. *Reputational Harm*

Generally, reputational harm is not recoverable in a breach of contact claim without specific proof of lost business opportunities as a result of plaintiff's diminished reputation. *Smith v. Positive Prods.*, 419 F. Supp. 2d 437, 453 (S.D.N.Y. 2005) (collecting cases). "Absent specific proof, damages for loss of reputation are too speculative to be recovered under contract law." *Saxton Commc'n Grp., Ltd. v. Valassis Inserts, Inc.*, No. 93-cv-00388, 1995 WL 679256, at *2 (S.D.N.Y. Nov. 15, 1995). This is consistent with the general rule in New York "that a breaching party is liable for all direct and proximate damages which result from the breach." *Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*, 487 F.3d 89, 110 (2d Cir. 2007).

Here, plaintiff alleges that her reputation was damaged when the failing NAPLEX score was reported to state licensing boards and pharmacy institutions. *See* Compl. ¶ 58. However, plaintiff fails to allege she lost any career opportunity because of a decline in her professional standing or reputation. *See Rapaport v. Epstein*, No. 24-cv-07439, 2026

WL 878714, at *13 (S.D.N.Y. Mar. 31, 2026) ("Plaintiff does not concretely tie the general reputational damage to any loss of a quantifiable business opportunity."). Any alleged reputational injury from the incorrect failing score being shared is thus "too speculative" for plaintiff to recover. Compl. ¶ 58. *Saxton Comms. Group, LTD.,* 1995 WL 679256, at *2. And while plaintiff does allege she lost her residency placement, she does not allege this was due to a decline in her reputation. Rather, she alleges that it was due to the incorrect failing score itself.

Accordingly, damages for mental and emotional distress, physical injury, and reputational harm are not recoverable for plaintiff, and are struck from the complaint.

### C. Economic Damages

Recovery for breach of contract includes general damages that are "the natural and probable consequence of the breach," as well as "[s]pecial, or consequential damages, . . . for . . . those risks which should have been foreseen at the time the contract was made." *Bi-Economy Market*, 10 N.Y.3d at 192 (denying motion to dismiss consequential damages for lost profits incurred by business—and contemplated in their insurance policy—when the defendant insurance company failed to timely make insurance payout following a major fire); *see American List Corp. v. U.S. News & World Rep., Inc.*, 75 N.Y.2d 38, 43 (1989) ("Special damages are extraordinary . . . [and] are recoverable only upon a showing that they were foreseeable and within the contemplation of the parties at the time the contract was made."); *East Coast Resources, LLC v. Town of Hempstead*, 707 F. Supp. 2d 401, 411 (E.D.N.Y. 2010) ("awareness is not the same as reasonable contemplation"). Lost wages are compensable as a matter of law on a breach of contract claim. *See Leidl v. Please Hold (UK) Ltd.*, No. 17-cv-006134, 2018 WL 1089748, at *5 (S.D.N.Y. Feb. 2, 2018); *Coastal Aviation, Inc. v. Commander Aircraft Co.*, 937 F. Supp.

1051, 1063 (S.D.N.Y. 1996), *aff'd,* 108 F.3d 1369 (2d Cir. 1997) ("Although lost profits may be recovered as consequential damages under New York law, a calculation and award of lost profits may not be based on speculation.").

Defendant seeks to strike plaintiff's claim for economic damages arguing plaintiff fails to show that at the time the contract was formed, "NABP contemplated that, if [p]laintiff did not receive a passing score . . . she would lose her pharmacist residency." Mot. 31. Plaintiff argues that defendant "should have clearly considered that a failure to report an accurate passing test would result in financial and economic hardship to the [p]laintiff." Opp'n 8.

Here, plaintiff may recover economic damages. After receiving a Doctor of Pharmacy, individuals, like plaintiff, must study for, take, and pass the NAPLEX as one key component of obtaining professional licensure. *See* Compl. ¶¶ 1, 10–11, 13–14. It is a reasonable inference that someone who takes the NAPLEX does so for the primary purpose of obtaining employment as a licensed pharmacist. *See* Compl. ¶¶ 2–3. As the sole administrator of the NAPLEX, Compl. ¶ 44, it is reasonable to infer that defendant understands the significance of the exam—which is one of two exams necessary to obtain a licensure, Compl. ¶¶ 13–14. More importantly, it follows that as a "probable result" of defendant's failure to correctly score the NAPLEX, a test taker would experience career consequences. *Fox v. Liberty Mutual Fire Insurance Co.*, No. 24-cv-07330, 2026 WL 867150, at *6 (S.D.N.Y. Mar. 30, 2026). Contrary to defendant's contention, actual awareness of plaintiff's placement in the residency program at NYU Langone Health is not necessary. Mot. 30–31. Based on defendant's role as the sole administrator of one of two licensing exams necessary to obtain a pharmacist license and to obtain employment as a pharmacist, it is reasonable to infer at this stage that defendant should have

reasonably contemplated that future employment opportunities would be impacted by a breach of its obligation.

Contrary to defendant's contention, plaintiff's allegations as to lost and diminished wages after receiving the incorrect failing score are adequate to support special damages relief at this stage. To determine whether special damages were contemplated by the parties, "the [C]ourt looks to the nature, purpose and particular circumstances of the contract." *Zicherman v. State Farm Fire & Casualty Co.*, 698 F. Supp. 3d 564, 569–70 (E.D.N.Y. 2023). The breaching party need not "have foreseen the breach itself or the particular way the loss occurred" to be liable for special or consequential damages. *Bi-Economy Market*, 10 N.Y.3d at 193.

Plaintiff alleges that in the two-month period between when she was told she failed and when she was informed she passed, she "was paid markedly less money than she would have been but for [d]efendant's wrongdoing." Compl. ¶ 37. Plaintiff also could not obtain part-time employment because she devoted her time to studying. Compl. ¶ 55. These allegations are plausible.

Accordingly, defendant's motion to strike economic damages from the complaint is denied.

### CONCLUSION

For the forgoing reasons, defendant's motion to dismiss and request to strike are **GRANTED in part**, **DENIED in part.** Plaintiff's claims for negligence, negligent misrepresentation, and deceptive business practices are dismissed. Plaintiff's requests for attorney's fees and costs and non-economic damages are stricken from the complaint. However, plaintiff may recover economic damages, if appropriate, in connection with her contract claim.

This case is respectfully referred to Magistrate Judge Marcia M. Henry for pretrial supervision.

**SO ORDERED.**


　　　　　　　　　　　　　　　　　　　　 　 /s/ Natasha C. Merle
　　　　　　　　　　　　　　　　　　　　 NATASHA C. MERLE
　　　　　　　　　　　　　　　　　　　　 United States District Judge


Dated:　　　　June 29, 2026
　　　　　　　 Brooklyn, New York

25